**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **YEIDY RODRIGUEZ,** | * |
| Plaintiff, | * |
| v. | *   Case No.: RWT 12-cv-2207 |
| **INDYMAC MORTGAGE SERVICES, FSB,** *a division of Onewest Bank, FSB*, | * |
| Defendant. | * |

**MEMORANDUM OPINION**

On June 11, 2012, Plaintiff Yeidy Rodriguez filed a twelve-count *pro se* Complaint in the Circuit Court for Prince George's County, Maryland, against Defendant, IndyMac Mortgage Services, FSB, a division of OneWest Bank, FSB ("OneWest"). (Doc. No. 2). Rodriguez asserts in her Complaint that OneWest engaged in "predatory loan" and discriminatory practices with respect to a mortgage on her property located in Fairmount Heights, Maryland. *Id.* ¶¶ 1-81. OneWest, a national bank headquartered in California, removed the action to this Court on July 26, 2012. (Doc. Nos. 1, 9).

**FACTUAL BACKGROUND**

Rodriguez alleges that on or about November 13, 2006, she purchased property located at 5713 Jost Street, Fairmount Heights, Maryland 20743. (Compl., Doc. No. 2, ¶ 17). Rodriguez executed a mortgage with a "Fixed/Adjustable Rate Promissory Note" serviced by OneWest for the amount of $259,000 at an interest rate of 7.75 percent. *Id.* ¶ 18. Later, Rodriguez executed a "Balloon Promissory Note" serviced by OneWest for the amount of $111,000 at an interest rate of 14.75 percent. *Id.* Rodriguez asserts that her "income was reduced" due to a change with her employment status "sometime in 2009." *Id.* ¶ 19. Due to Rodriguez allegedly "being

victimized" by OneWest's "predatory loan practices," and to remedy her economic situation, she sought a loan modification from OneWest pursuant to the Home Affordable Modification Program ("HAMP").  *Id.* ¶ 20.

Around November of 2011, Rodriguez allegedly executed a "HAMP trial plan agreement," which was never "formally consummated by signing."  *Id.* ¶ 21.  Rodriguez claims that OneWest never gave her a signed copy of the mortgage and note, and never provided her with any "Spanish Translation/Interpretation" of such documents.  *Id.* ¶ 22.  Rodriguez claims that she provided OneWest with a "litany of documents for a HAMP loan modification" as her "first choice" among foreclosure avoidance alternatives.  *Id.* ¶ 30.  She also allegedly provided all documents requested by OneWest to evidence her financial hardship, along with "all requisite authorization forms, acknowledgements, and agreements" in relation to her "Request for Modification and Affidavit ('RMA')."  *Id.* ¶ 31.

OneWest allegedly failed to provide Rodriguez with "important documents" that would explain her "consumer rights with a 'Spanish translation,' as well as other rights," including the "right to cancel the contract and the Federal Truth in Lending Disclosures."  *Id.* ¶¶ 22-23.  Rodriguez claims that from January 2010 to June 11, 2012, OneWest "systematically acted with carelessness, recklessness, negligence, bad faith, breach of care, breach of duty, breach of good faith and fair dealing, gross negligence and with deliberate indifference in its inaction of malfeasance, misfeasance and nonfeasance in its efforts or attempt to modify" her mortgage in accordance with her financial hardship, RMA, and/or "with the provisions of the $800 million Servicer Participation Agreement that [OneWest] signed with the Federal Government."  *Id.* ¶ 32.

## PROCEDURAL HISTORY

On July 26, 2012, OneWest filed a Motion to Clarify Writ of Summons, which notes that

the Writ of Summons issued by the Circuit Court for Prince George's County provided OneWest with thirty days to respond to Rodriguez's Complaint, while Maryland Rules allowed OneWest sixty days to respond. (Doc. No. 4, ¶¶ 3-7). OneWest advised that it was served on June 26, 2012. *Id.* ¶ 4. OneWest requested an Order granting it sixty days from the date it was served to respond to the Complaint. *Id.* ¶ 8. On August 16, 2012, OneWest filed a Motion to Dismiss for Failure to State a Claim. (Doc. No. 8). Now that OneWest has responded to the Complaint, the Court will deny as moot OneWest's Motion to Clarify Writ of Summons (Doc. No. 4).

On July 31, 2012, Rodriguez filed a Motion for Remand to State Court and Award of Costs. (Doc. No. 7). In a Memorandum Order dated August 21, 2012, Judge Peter J. Messitte denied Rodriguez's Motion after finding that diversity jurisdiction and federal question jurisdiction exist in this case. (Doc. No. 15). On August 27, 2012, Rodriguez filed an Opposition to OneWest's Motion Dismiss. (Doc. No. 16).

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court has further articulated the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. A *pro se* plaintiff is held to a "'less stringent'" standard than a lawyer, and the Court must liberally construe a *pro se* plaintiff's complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## ANALYSIS

II.     **Motion to Dismiss the Complaint**

    A.     **Counts III, IV, V, and VI**

Counts III, IV, V, and VI of Rodriguez's Complaint assert causes of action against OneWest relating to her application for a HAMP loan modification. Count III alleges that OneWest fraudulently led Rodriguez to believe that she qualified for a HAMP loan modification. (Compl., Doc. No. 2, ¶ 44). Count IV alleges that OneWest made false representations regarding Rodriguez's mortgage in order to reject her HAMP loan modification request. *Id.* ¶ 54. Count V asserts that OneWest schemed to not provide Rodriguez with a HAMP loan modification and "reap obnoxious profits and benefits at the calculated expense and detriment of [Rodriguez's] misfortune." *Id.* ¶¶ 60-61. Count VI claims that OneWest participated in a conspiracy which included "the threat of a foreclosure action when in fact, no right lawfully exist[ed] due to [Rodriguez] never rescinding" her HAMP loan modification application due to her "lack of legal standing." *Id.* ¶ 66. For reasons discussed below, these HAMP-based Counts must be dismissed for failure to state a claim upon which relief can be granted.

The United States Treasury Department's Home Affordable Modification Program ("HAMP") "is a national program designed to stem the home foreclosure crisis by providing affordable mortgage loan modifications and other alternatives to eligible borrowers." *Ramos v. Bank of America, N.A.*, No. DKC–11–3022, 2012 WL 1999867, at *1 (D. Md. June 4, 2012). "Under HAMP, prospective borrowers enter into a standardized contract, called a Trial Period Plan ('TPP'), with lenders/servicers . . . for a three-month trial modification of the borrower's existing note and mortgage." *Id.*

"Congress did not create a private right of action to enforce the HAMP guidelines."

*Allen v. CitiMortgage, Inc.*, No. CCB–10–2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011); *see also, e.g.*, *Dugger v. Bank of America/Countrywide Loans*, No. 1:10CV00076 SNLJ, 2010 WL 3258383, at *2 (E.D. Mo. Aug. 16, 2010) (noting that neither the Troubled Asset Relief Program ("TARP"), the Emergency Economic Stabilization Act of 2008 ("EESA"), "nor HAMP provide[] a private right [of] action to individual borrowers."). Courts in the District of Maryland, however, have held "that separate and apart from HAMP, enforcement of the TPP, if one exists, may give rise to a private right of action." *Ramos*, 2012 WL 1999867, at *3 (citing *Stovall v. Sun Trust Mortg., Inc.*, No. RDB–10–2836, 2011 WL 4402680, at *11 (D. Md. Sept. 20, 2011); *Allen*, 2011 WL 3425665, at *4).

Claims which merely attempt "to enforce the HAMP guidelines," however, without referencing allegations that an applicable TPP exists, must be dismissed. *Ramos*, 2012 WL 1999867, at *3 (dismissing claims under counts which "attempt to enforce HAMP by demanding a TPP"). Here, Counts III, IV, V, and VI of Rodriguez's Complaint are each founded on OneWest's alleged failure to comply with HAMP, and constitute impermissible attempts to enforce the HAMP guidelines. Further, Rodriguez alleges that her application for a "loan modification was never consummated by signing therein," and she even concedes that she lacks "legal standing" for at least certain claims related to HAMP. (Compl., Doc. No. 2, ¶¶ 21, 66). Consequently, Counts III, IV, V, and VI of Rodriguez's Complaint will be dismissed.

    B.    **Counts I and VI**

In Counts I and VI of her Complaint, Rodriguez asserts factually vague claims regarding a "civil conspiracy to defraud" by OneWest. *Id.* ¶¶ 35-37, 65-68. Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Here, Rodriguez failed to plead particularized facts,

such as the time, place, and contents of any false representations or the identities of the conspirators, in support of her claims that OneWest engaged in an unlawful conspiracy. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (noting that the "'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'") (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). Rodriguez's allegations concerning fraud thus fail to meet the particularity requirements of Rule 9(b), and Counts I and VI accordingly will be dismissed.

### C. Counts II and III

In Counts II and III of Rodriguez's Complaint, she makes conclusory allegations that OneWest violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, by failing to provide her with certain disclosures and notices. (Doc. No. 2, ¶¶ 38-41, 42-49). The Court will dismiss Counts II and III of Rodriguez's Complaint because her factual allegations fail to support a cognizable claim under any section of RESPA, as she has not identified how OneWest failed to comply with disclosure or notice requirements in Section 2605, received unlawful compensation under Section 2607, or otherwise acted in violation of RESPA.

### D. Counts III, IV, V, VIII, IX, and X

In Counts III, IV, V, VIII, IX, and X, Rodriguez appears to claim that OneWest violated provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* These claims are void of adequate factual support, and are also time-barred by the TILA because Rodriguez failed to bring her claims within one year of any alleged violation. *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court

...

of competent jurisdiction, within one year from the date of the occurrence of the violation.").[1] These claims also fail because even if the parties entered into a loan modification, the TILA does not appear to apply to loan modifications. *See* 12 C.F.R. § 226.20; *Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F. Supp. 2d 709, 715-16 (E.D. Va. 2003) (noting that "restructuring/modification agreements are exempt from TILA's disclosure requirements") (citing 12 C.F.R. § 226.20(a)(4)). Thus, the Court will dismiss Counts III, IV, V, VIII, IX, and X.

### E. Count V

Count V of the Complaint includes an allegation that OneWest has been "unjustly enriched at the expense of" Rodriguez. (Doc. No. 2, ¶ 63). "In Maryland, the elements of unjust enrichment are: (i) a benefit conferred upon the defendant by the plaintiff; (ii) the defendant's knowledge of the benefit; and (iii) the acceptance by the defendant of the benefit under such circumstances as to make it inequitable to retain the benefit without payment of its value." *Froelich v. Erickson*, 96 F. Supp. 2d 507, 524 (D. Md. 2000) (citing *Klein v. Fidelity & Deposit Co.*, 700 A.2d 262 (Md. Ct. Spec. App. 1997)). "To sustain an unjust enrichment claim, a plaintiff must have provided an actual benefit to the defendant." *Froelich*, 96 F. Supp. 2d at 524. Here, Rodriguez has failed to allege facts that she provided a benefit to OneWest, of which OneWest had knowledge, and which would be inequitable for OneWest to retain. Therefore, the Court will dismiss Count V.

---

[1] To the extent that Rodriguez is attempting to rescind her November 13, 2006 loan, such a claim is also time-barred by the TILA, as she filed suit more than three years after this date, on June 11, 2012. *See* 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . .").

### F.     Count VII

Count VII of Rodriguez's Complaint alleges that OneWest violated the Virginia Consumer Protection Act. (Doc. No. 2, ¶¶ 69-70). Virginia law, however, has no applicability to the Maryland property and legal issues in this action. Thus, the Court will dismiss Count VII.

### G.     Count X

In Count X of her Complaint, Rodriguez asserts a claim of "breach of good faith and fair dealing." (Doc. No. 2, ¶¶ 75-76). Maryland law, however, "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing." *Magnetti v. University of Maryland*, 909 A.2d 1101, 1105 n.3 (Md. Ct. Spec. App. 2006). Accordingly, the Court will dismiss Count X of the Complaint.

### H.     Count XI

Count XI of Rodriguez's Complaint asserts a cause of action for "mental anguish, emotional distress, and psychological trauma resulting in PTSD." (Doc. No. 2, ¶¶ 77-78). The Court construes this claim as one for intentional infliction of emotion distress ("IIED"). Under Maryland law, a "claim of IIED has four elements: '(1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; (4) [t]he emotional distress must be severe.'" *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). Here, Rodriguez has failed to plead facts in support of all of the elements of IIED. Further, this Court previously noted that it "cannot imagine *any* set of facts surrounding a mortgage transaction that would support an inference of extreme and outrageous conduct." *Asafo-Adjei v. First Savings Mortgage Corp.*, No. RWT–09–2184, 2010 WL 730365, at *5 (D. Md. Feb. 25, 2010) (emphasis in original). The Court will therefore

dismiss Count XI of the Complaint.

    **I.**    **Count XII**

In Count XII of her Complaint, Rodriguez seeks injunctive relief. (Doc. No. 2, ¶¶ 79-81). Rodriguez captions this Count as one for "quiet title," and requests that the Court enjoin OneWest from certain activities, such as keeping certain documents relating to her loan. *Id.* ¶¶ 80-81. In order to obtain such relief, Rodriguez "must establish" that: (1) she is "likely to succeed on the merits"; (2) she is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips" in her favor; and (4) an "injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Rodriguez, however, has failed to establish any of these elements, and therefore is not entitled to injunctive relief. Moreover, Rodriguez has failed to demonstrate that OneWest's interest in her property is invalid such that this Court should "quiet" or remove OneWest's lien. *See* Md. Code Ann., Real Prop. § 14-108. Accordingly, the Court will dismiss Count XII of Rodriguez's Complaint.

## **CONCLUSION**

For the foregoing reasons, the Court will deny as moot OneWest's Motion to Clarify Writ of Summons (Doc. No. 4), grant Defendant's Motion to Dismiss (Doc. No. 8), and dismiss Plaintiff's Complaint (Doc. No. 2). A separate order will follow.


Date: <u>March 20, 2013</u>　　　　　　　　　　　　　　<u>　　　　　/s/　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　　ROGER W. TITUS
　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE